BYRON R. HOXSIE *et ux. vs.* HARRIS I. POTTER.

An indigent widowed mother put her infant child in the care of her deceased husband's sister, and allowed it to remain there for nine years, when, after a remarriage, she brought *habeas corpus* to compel its return. Nothing appeared against the mother's ability and fitness to care for the child, but it appeared that the child had been well cared for by the aunt, who, with her husband, had learned to regard the child as her own.

*Held,* that the court would not rupture the relations of nine years growth, established and continued with the mother's assent.

*Held,* further, that the mother and child should have full opportunities to see each other.

*Held,* further, that any future change of circumstances might be followed by proper action on the part of the court.

*Held,* further, that the petition for *habeas corpus* should be dismissed.

PETITION for a writ of *habeas corpus.*

*December* 27, 1888. STINESS, J. The petitioner, Mrs. Hoxsie, prays for a writ of *habeas corpus*, to secure the custody of her minor child, Pardon H. Cranston. Her former husband, Lyman M. Cranston, died in May, 1880, leaving four children, one of whom was Pardon, then an .infant three months old. Upon the death of Mr. Cranston she was unable to provide for the children, and it was arranged, as she claims, that her father should take the

two elder; that a brother of her deceased husband should take the third, and that the respondent's wife, a sister to Mr. Cranston, should take the babe, until she could care for them herself. The mother then worked for her own support until March, 1884, when she married Mr. Hoxsie. After their marriage she took the other children to her home, and says she wrote to the respondent for this one, but received no answer. No other demand was made until shortly before the filing of this petition.

The respondent claims that the child was given to him absolutely, by the mother, after the death of Mr. Cranston, pursuant to his expressed wish in his last sickness. We are not called upon to say how far such a contract, if made, is valid, or to what extent it is revocable; for we are not satisfied from the testimony that the mother contracted unreservedly to give the exclusive custody of the child to the respondents; although we do not much doubt that, as matters then stood, there seemed to be little. prospect of her ability to retake and care for the child, and that all the parties thought that this was not likely to be done, whether anything was said about it or not. The question then is, whether, under the circumstances, the writ shall issue, upon the claim of the petitioner as the mother and natural guardian of the child. Undoubtedly, as a general rule, the mother, in such a case as this, is entitled to the custody of her children. Nothing is alleged against her ability and fitness to care for the child properly, and we saw nothing in the testimony or in her appearance to lead us to doubt upon that point. But while this is a general, it is not a controlling rule. Upon petition for a writ of *habeas corpus*, the court is bound to free the child from illegal restraint, yet it is not bound to award the custody to any particular person. The relations between children and parents and foster parents are of an intricate and delicate character, involving the welfare and happiness of all the parties. Custody of children, therefore, cannot be awarded by a fixed and inflexible rule, as if it were a right of property. Recognizing the ordinary rights of a parent, the courts of this country nevertheless hold that when these rights cannot properly be exercised, or when they have been waived by the voluntary establishment of new relations, then all the circumstances must be considered, and that course followed which, in the judgment of the

court, appears to be best adapted to the interests, feelings, and rights of the parties concerned.

Primarily the welfare of the child is to be considered; but when, as in this case, that is not the controlling consideration, the court may look beyond it to existing relations. Thus, in *Pool* v. *Gott*, 14 Monthly Law Reporter, 269, where a father sought to recover the custody of his child from its grandparents, Shaw, C. J., says : " Although there is no agreement proved, yet the conduct of the father, during nearly the whole life of the child, furnishes reason for supposing that he surrendered his rights over the child, by a tacit understanding, if not by an express agreement. He has, for eight years or more, been able to retake the child, and has made no offer to do so. No demand or offer has been made on either side, that he should contribute to her support. His present assertion of his right is in consequence of what he deems an unreasonable refusal of a different request. By his own acquiescence he has allowed the affections on both sides to become engaged in a manner he could not but have anticipated, and permitted a state of things to arise which cannot be altered without risking the happiness and interest of his child. He has allowed the parties to go on for years in the belief that his legal rights were waived, and this relation of adoption sanctioned and approved by him. Under such circumstances I do not think that the petitioner is in a position to require the interference of the court in favor of a controlling legal right on his part, against the rights, such as they are, the feelings, and the interests of the other parties." In the recent case of *Jones* v. *Darnall*, 103 Ind. 569, the court left the custody of the child with the grandparents, upon the petition of the father for a writ of *habeas corpus*. In *Chapsky* v. *Wood*, 26 Kans. 650, it is held that though the gift of a child is revocable, yet after it has been made and the child has been left for years with others who have discharged all obligations of care and support, the claim of the father for his child will depend upon the welfare of the child. If reclamation is sought soon after the gift, and the father is not an unfit person, the law of nature will prevail, and little attention will be given to speculative advantages of wealth and social position. " But, on the other hand, when reclamation is not sought until a lapse of years, when new ties have been formed,

and a certain current given to the child's life and thought, much attention should be paid to the probabilities of a benefit to the child from a change."

In *Clark* v. *Bayer*, 32 Ohio St. 299, 306, the court says: " After the affections of both child and adopted parent become engaged, and a state of things has arisen which cannot be altered without risking the happiness of the child, and the father wants to reclaim it, the better opinion is that he is not in a position to have the interference of a court in his favor. His parental rights must yield to the feelings, interests, and rights of other parties acquired with his consent." See, also, *Verser* v. *Ford*, 37 Ark. 27; *Bonnett* v. *Bonnett*, 61 Iowa, 199; *United States* v. *Green*, 3 Mason, 482; *In re Waldron*, 13 Johns. Rep. 418.

In the case before us it appears that the boy, Pardon, taken as a babe, has been cared for from his infancy by the respondent and his wife, as if he had been their own ; he has received surgical treatment, resulting in cure of a trouble which crippled him; he has the advantage of the public schools of the city of Providence ; no suggestion is made of any neglect in regard to his moral or physical welfare; he has had no other home ; he has received no other support ; and during the nearly nine years of his life he has known no other filial relation than such as he has borne to the respondent. Along with this, the respondent and his wife have become strongly attached to the boy, and have come to regard him as their own. Indeed, there may be doubt whether, with no young child of their own, they would have undertaken the care of a babe through infancy and early childhood, a period, not only when there is greatest anxiety and trouble, but also when the affections on both sides are most easily and tenderly engaged, had they supposed that at this time in his life they would be called upon to surrender him. The case is not without difficulty, but we do not feel called upon to sunder the ties that have been permitted to grow up, believing that the happiness of the boy and the rights and feelings of his foster parents will be best subserved by leaving the custody where it now is. Moreover, while we do not doubt the petitioner's love for her child, we think that by this course there will be less violence to interests and affections than by granting the petition ; especially when we consider that, with

other children to engage her attention, she refrained for about four years and a half from any earnest effort to recall this one; having visited and seen him but once within that time; and that when she visited him in March, 1887, she did not demand his return to live with her, but only requested that he might visit her. In cases like this, perplexity finds some relief in the fact that the decision is not necessarily final, but that any change of circumstances which may affect the welfare of the child may also lead to a modification of the action of the court.

With the suggestion that the mother and child should have full opportunities to see and visit each other, we think the prayer for the writ of *habeas corpus* must be denied.

*Petition dismissed.*

*Edward H. Hazard & Henry B. Whitman,* for petitioners.

*Edward D. Bassett,* for respondent.