## PADDOCK v. EAGER.

*(Supreme Court, General Term, Second Department. July 18, 1890.)*

PARENT AND CHILD—PARENT'S RIGHT TO THE CUSTODY OF THE CHILD—HABEAS CORPUS.
    On a petition by the father for a writ of *habeas corpus* to obtain the custody of his minor child from her grandmother, it appeared that respondent had reared the child from infancy, in a home of wealth and refinement, and that the child, who was about seven years old, was devoted to respondent, and desired to remain with her. Petitioner had no means to speak of, and no home, and intended to have the child live with his father and step-mother. He had failed to support his wife during her life, and he did not attempt to get the custody of the child till after her death. *Held,* that the interests of the child required that she should be left with respondent. PRATT, J., dissenting.

Appeal from special term, Orange county.

Application by Wilbur L. Paddock for writ of *habeas corpus* to obtain the possession of his infant child, Grace Paddock, who was in the custody of her grandmother, Mary C. Eager. An order was made at the special term awarding the custody of the child to petitioner, and respondent to the writ, Mary C. Eager, appeals.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*M. N. Kane,* (*B. R. Champion,* of counsel,) for appellant.  *John B. Mayo,* (*G. W. McElroy,* of counsel,) for respondent.

DYKMAN, J.  This is a proceeding under a writ of *habeas corpus* for the procurement of the custody of an infant child, and the controlling facts are these: The relator was married to Jennie H. Eager, the daughter of the respondent, in June, 1881, and she died in May, 1889, leaving an infant daughter, named Grace Paddock, who is now nearly eight years of age. She was born at the home of the respondent, and has lived with her most of the time since. The relator failed to support his wife after his marriage, and she lived at her mother's, and died there. The respondent is a woman of wealth and refinement, and she has reared this child from infancy, and has become attached to it by the closest ties of love and affection, and the attachment is mutual, and the child, who was about seven years of age when she was examined in this proceeding, expressed the strongest desire to remain with her grandmother, and she is not too young to have a choice. Until this time the father never sought the custody of his child, and she remained with the respondent not only with his assent, but from positive necessity, arising from his failure to furnish her support; and even now he has no home, no household, and no means, and earns only about $17 a week, which can be but little more than sufficient for his own maintenance. What is perhaps worse than all, he proposes to compel this child to live with his father and step-mother, who are entire strangers to her, and who have, and can have, no affection for her, and who, in common with the relator, entertain extreme hatred and resentment towards the respondent and her family. So that it comes to this: The relator, after his' long neglect of his child, expects this court to remove her from the only home she ever knew, where she is surrounded by wealth and affection, and where her young life has been made happy, and where she has been nourished and cherished with a solicitude and a wealth of affection, born of the love entertained for her unfortunate mother, whose untimely death they attribute to her husband, and deliver her to him, to the end that he may place her with his step-mother, where, so far as we can see, she will experience only the absence of all her present comforts, and the deprivation of all her future prospects. Add to all these considerations the dying request of a broken-hearted mother, and the case is before us. It may be stated preliminarily that we find no room in this case for the operation of the writ of *habeas corpus*, whose office is to release persons improperly restrained and deprived of their liberty. This little girl is under no restraint, and suffers no deprivation of her personal liberty; on the contrary, she is where she would be, and she desires to remain where she is, and she enjoys the utmost freedom.

But the relator bases his application upon his natural rights as the father of the child, and demands her surrender to him because she is his child, and the order appealed from was doubtless granted upon that theory. As we have already said, the office of the writ of *habeas corpus* is discharged by allowing the party detained to go free and exercise his volition, but in the case of a child, incompetent from infancy to exercise proper discretion, the courts sometimes undertake to determine for it, and then the welfare of the child is the paramount consideration which controls the exercise of the discretion of the court. The rights of parents are to be subordinated to the interests of the child, and to be regarded no further than they are in harmony with its welfare. They have no paramount right to the custody of their children which they can enforce against all other considerations. *In re Waldron,* 13 Johns. 418, was a case much like the present, where an infant was in the custody of its grandfather; and it appeared that it would be more to the benefit of the infant to remain with him than to be put under the care of the father, and no improper restraint was shown. The court refused to direct the infant to be delivered to the father. The same doctrine is to be deduced from the case of *Mercein* v.

*People,* 25 Wend. 64, where the whole subject underwent a most exhaustive examination in the late court for the correction of errors.   To the same effect is *People* v. *Kling,* 6 Barb. 366; *People* v. *Wilcox,* 22 Barb. 178; *In re Welch,* 74 N. Y. 299; *Wilcox* v. *Wilcox,* 14 N. Y. 576; *Brush* v. *Brown,* 35 Hun, 324.

The foregoing principles are well settled, and run through all the cases, and the light cast by them upon this case renders it plain and simple.   There is scarcely a pretense that the interests of this child will be subserved by her delivery to her father.   Moreover, it is not her interest which he seeks to promote, or her happiness which he desires to secure or advance, but his action is evidently incited by malevolence of purpose towards the respondent and her family.   He does not expect to have his child with him, or to enjoy her society, but he desires to remove her from her home where she was born, and where she is environed with refinement and morality and virtue and wealth, where she will be nurtured and educated, and enjoy the care and protection of those who are of her blood, and bound to her by ties of nature and association, and where she desires to remain, and place her with his step-mother, who is not of her kindred, who can entertain for her no natural affection, who does not desire her, and to whom she will be a burden, where she can receive none of the advantages which wealth and refinement can supply, and where she will forfeit the pecuniary provision made for her by her mother's will upon condition that she remain in the family of the respondent.   Under such circumstances, and in view of all the facts and the surroundings of the case and the parties, the natural rights of the parent must yield to the manifest interests of the child, and she must remain in the family of the respondent so long as she desires to do so.   Her best interests will be thus subserved, and the order appealed from must be reversed, with costs and disbursements.

BARNARD, P. J., concurs.

PRATT, J., (*dissenting.*)   The appellants argue that in applications for the custody of a child the chief concern of the court will be the interest of the child, and not the legal right of any claimant.   That rule may be conceded, but it by no means follows that the rights of parents are extinguished.   In *Howsie* v. *Potter,* (R. I.) 17 Atl. Rep. 129, the case chiefly relied on by appellants, the court did not base its decision upon the real or supposed interests of the child. The court there say that "primarily the welfare of the child is to be considered; but when   *   *   *   that is not the controlling consideration, the court may look beyond it to existing relations."   In that case the welfare of the child was believed to be assured in the hands of either claimant.   That question being thus eliminated from the controversy, the decision was based on the relations existing between the child and the various litigants, and the mother, having voluntarily allowed the child to live with the sister of her deceased husband from birth until the age of nine years, was properly held to have waived her *prima facie* right to the custody of the child.   One consideration there dwelt upon by the court was that the mother had other children, while the aunt had none.   But the court distinctly recognizes that, other things being equal, the prior right is in the parent as against any third party. We might rest the decision of this case upon that rule; but a careful study of the testimony convinces us that the interests of the child, and the superior legal right of a parent, concur to require an affirmance.   The father has no other child, and can do more for his daughter than would be possible under other circumstances.   The grandmother has several children, whose claims upon her bounty are at least equal to those of her grandchild.   In the ordinary course of events the father, who is still young, will be able to care for his daughter during many years, which cannot be said with quite the same probability of the grandmother.   But a consideration still more controlling

is that the testimony gives reason to believe that if the child remains with her grandmother she will be taught to dislike her father, and an estrangement produced in her feelings towards him which no affection on his part could ever change. Her present dislike for him, which can be ascribed to nothing but the influences by which she is surrounded, is strong evidence that a change is required both for her sake and for his. On the other hand, the testimony shows no reason to believe that if placed with her father any effort will be made to estrange her feelings from the family of her mother. Having lost her mother, the court will not willingly so dispose of her custody that the misfortune be made greater by an estrangement from her natural protector and nearest surviving relative. The order appealed from should be affirmed, with costs.