## CARPENTER *v.* CARPENTER.

1. Infants—Custody—Husband and Wife—Contracts—Public Policy—Divorce.

> Provisions in a contract of separation awarding the custody of an infant son to the father, with permission to the mother to visit the child, do not control the court in awarding the custody of such child in subsequent divorce proceedings, although the agreement is not invalid or contrary to public policy. The question which determines the action of the court is usually and primarily the best interest of the minor.

2. Same.

> Evidence considered, and *held*, to justify an order of the trial court awarding the custody of the child to its mother, with permission to the father to visit the minor and to have possession at stated intervals.

Appeal from Grand Traverse; Mayne, J. Submitted April 11, 1912. (Docket No. 115.) Decided July 22, 1912.

Petition by Perlie P. Carpenter against Ora A. Carpenter for the custody of an infant son of petitioner and respondent. From a decree for petitioner, respondent appeals. Affirmed.

*John W. Patchin,* for complainant.

*Underwood & Umlor,* for defendant.

Steere, J. This is the third time the parties hereto have been before this court with their domestic infelicities. In 154 Mich. 100, their small property interests were the topic of discussion and the subject of adjudication. In 149 Mich. 138, their youngest child, Willard W. Carpenter, then an infant, was the apple of discord, presenting a more trying and serious contention. In the latter case the

action of the learned circuit judge, awarding custody of the child to the mother, with provision that the father should have the right to visit it at all reasonable times during the daytime, be notified of its sickness, allowed to provide proper medical care, etc., was affirmed. This court there said, through Justice GRANT:

"It is certainly to be hoped that these parents, if they cannot live together in harmony and take care of their offspring as they ought to do, will at least have the good sense to agree to what is for their children's best interests."

Subsequent proceedings indicate that, while the learned justice made a commendable effort in leading these parties to the fountain, he was unable to make them drink. The record of this case shows that divorce proceedings have since been instituted and carried through to final decree, resulting in severance of the marriage ties, in which the custody of this child was again the subject of bitter contention.

The decree of divorce, granted on October 14, 1909, gave the legal custody of said child to the father, with a provision that from the 1st day of November until the 1st day of June, 1910, the child should remain with the mother in Traverse City, during which time the father should have the right to visit it on Saturdays and to take it to his home during holiday season between terms of the public schools; but that during the period from June 1st to November 1st the child should remain with the father, in his complete care, custody, and control. In case of sickness, the father should be notified, and have the right to employ a physician for the child; the purpose of the order regarding sickness being occasioned by the fact that the mother is a Christian Scientist, and does not believe in the administration of medicine in case of sickness. In July, 1911, complainant filed this petition asking the court for full custody of the child, alleging as reason therefor that the father claimed the provisions of the order relative to the child, just referred to, terminated on the 1st day of

November, 1910; that, under the terms of the decree, defendant claimed to be entitled to the custody of the child thereafter, without regard to any rights of the mother or the wishes of the court, as announced from the bench, and that he has kept the child from her custody continuously from the fall of 1910 until the 20th of March, 1911; that she fears, from defendant's conduct, that he will refuse in the future to release the custody of the child to her for any period, unless the previous decree be modified so as to give her custody and control. She also claims, in her petition, that she has a good home for the child, being engaged in the keeping of boarders in Traverse City, and so situated as to be able to furnish him the advantage of good schools, with a mother's care and proper surroundings.

The defendant, in answer and by cross-petition, admits the decree making provision relative to the child, alleges that it was advisedly made and carefully read over and corrected by the court, that thereby defendant is entitled to the legal custody of the child, without modification or restriction, after the 1st day of November, 1910. Each of the parties alleges, in pleading, and introduces much testimony tending to sustain the claim, that the child would be much better off with him or her than with the other.

That the marriage of these parties was foreordained to failure is perhaps manifest from their charges and allegations in regard to each other, supported by the testimony of numerous witnesses on each side, evidently respectable and worthy people, who testify fully in regard to the good reputation, character, and standing of each, with some comparative qualifications one way or the other in accordance with their respective points of view. It is the claim and evidence of complainant that she is specially qualified to care for and educate the child; that she is a school teacher of many years' experience, having first grade certificates for teaching school in different States, has warm love and affection for the child, as well as other children she had by a former husband; that she is able to furnish

a good home for him, with all the advantages of good schools, while defendant resides in the country, is a man of very limited education, of little means, and small capability for earning a livelihood even at farm labor, which is the only work he understands, and that the only home he has is with his father and mother on a small farm; that his parents are old people, over 70 years of age, and not, at their time of life, the most proper people to have the care and bringing up of a child of tender years. She does not dispute defendant's good character and standing in the community; neither does he hers. Defendant alleges, and produces testimony to support his claim, that he has morally clean, wholesome home surroundings with his parents, where suitable religious and moral training can be given his child, together with school facilities by no means secondary to the public schools of Traverse City; that he resides upon a farm where this child can have plenty of exercise:

"That he loves his son, and desires to rear him the best he can under the example of a God-fearing father who neither uses tobacco in any form nor intoxicants of any kind, nor indulges in profanity or vulgarity, and means to be honest and fair in all his dealings with his fellow men, lives in a well-developed and prosperous farming community where the morals and society are such as are usually found in such a community in this county, and he avers that such a place, with proper home surroundings, is one of the best places to rear children, and develop a boy and equip him with a strong mind and a strong body."

He also throws light upon the cause of this dissension by the statement that he is a member of the Methodist Episcopal Church, and—

"That complainant is an active member of the First Church of Christ, Scientist, of Traverse City, Mich., and professes to believe in the doctrines and tenets of that so-called religious denomination, and does not believe in giving medicine in case of sickness, and is not, in that regard, at least, a suitable person to rear and care for said Willard Carpenter, who is now of the age of seven years and over."

On these various propositions the respective parties, with their witnesses, line up and present their conflicting claims to the court.

Early in their domestic troubles, upon first separating in December, 1905, these parties entered into a written agreement, touching their property and the custody of their children, by which it was provided, as recited in 149 Mich. 138, that the father should—

"Retain such custody (of the youngest child) so long as he gives the child proper care, support, and suitable home surroundings, subject to the right of said Perlie B. Carpenter to visit said child at reasonable intervals."

Counsel for defendant and appellant strenuously contend that this contract was binding upon the parties and should be enforced by the court, and should control the court in the disposition of the child, irrespective of anything which may be shown as to comparative qualifications and ability to care for him, so long as it is not established that the child is without proper care, support, and suitable home surroundings. The contract of separation of December 11, 1905, was not in contemplation of subsequent divorce, but only "hereafter to live separate and apart from each other" as husband and wife, so far as shown. Such a contract does not control, and need not be regarded by the court in awarding custody of the children in divorce proceedings instituted subsequent to the contract. *Kremelberg* v. *Kremelberg*, 52 Md. 553. While contracts of this nature are not regarded as against public policy and good morals and are recognized as valid as a class, it has always been regarded as the duty of the courts, in reviewing them, to enforce or reject their provisions according to the best interests of the child, and to hold that as the paramount consideration. In *People* v. *Porter*, 23 Ill. App. 196, it is held, in effect: If a contest arises over it in the courts, all considerations will be subordinated to the interests and welfare of the child, viewed in the light of the character and habits of the contending parties, the fact whether the reclamation is sought

within a short time or after the lapse of years, and the other circumstances of the particular case.

The question now raised was before this court in 149 Mich. 138 (112 N. W. 748), when the parties were yet husband and wife, though separated, and before divorce proceedings were instituted. It was there said:

" A husband and wife, on separating, may make a valid contract for the care of their minor children. Such contract, while valid between the parties, will not be sustained to the detriment of the minor child, whose interests are of the first consideration. * * * Counsel for respondent in their brief ask:

" ' Are we to assume that courts are better qualified to say who shall have the custody of minor children than their natural parents ?'

"The instant answer to this question is:

" ' Yes; when it appears that the child is not, by the parents, or either of them, placed amid proper surroundings.' "

The learned circuit judge, whose action is now sought to be reviewed, is inevitably thoroughly familiar with the issues of this litigation, having had to deal with it in its various phases from time to time for years past. His several findings and conclusions on the questions involved show that he has given it much attention. He is on the ground, familiar with the parties and their witnesses. We think it manifest from his utterances and orders that he has sought to look only to the best interests of the child, is fair, impartial, and without prejudice as between the parents, and anxious to arrive at what is just and right. He says, amongst other things:

" In the conduct of the legal proceedings following the separation of the parents much ill feeling has been shown, and the interests of the child not considered. Were I to take into consideration only the parents and their desires, I should certainly award the custody of the child to the father, but the interests of the child, Willard Carpenter, require that his custody be awarded to the mother. Inasmuch as I am thoroughly convinced that neither party will respect this order except as the court has the power

to enforce the same, and the mother having no property interests to cause her to remain within the jurisdiction of this court, the legal custody of the child is awarded to the father, Ora A. Carpenter, but the mother, Perlie P. Carpenter, shall have the actual custody and possession of the child during the school year, commencing on this date and ending on the last day of the school year of Traverse City schools. The father shall have the actual custody and possession of the child during each alternate Saturday, weather permitting him to take the child to his home, also on all vacations of one week or more in duration. It is the intent of this order that the father shall have the care and custody of the child during all vacations of one week or longer, and every alternate Saturday, and the mother shall have the care and custody of the child during the school year of the Traverse City schools, until the further order of this court. My principal reason for awarding the custody of the child to the mother is that I consider her a woman of unusual ability in the training of children, and, further, because I find that the child is not as far advanced in school work as he would have been had the order of the court relative to the custody of the child been respected."

After a careful review of the testimony, in connection with the above finding and adjudication, we have no disposition to disturb the decree. Were it not for the bitterness existing between the parents, the testimony indicates that the child is fortunate in the particular that both parents are persons of good character, moral, religiously inclined, fond of and desirous of keeping him, and either could and would furnish him a fairly good home with parental care and affection. The cloud upon his horoscope, presented by this record, is the possibility of ultimate litigious paranoia through heredity or contagion. Experience teaches that children brought up under such a shadow often show the effects of it in after life.

The decree is affirmed, with costs.

MOORE, C. J., and McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BLAIR and BIRD, JJ., did not sit.