RAWLS, Judge.
Appellant, Troy Davidson, Jr., the natural father of Theresa Davidson, a minor, appeals a final judgment appointing Robert A. Parker and Mary Sue Parker, maternal grandparents, as joint guardians of the person and property of their granddaughter.
The sole point on appeal posed by appellant is whether the trial court abused its discretion by appointing the maternal grandparents as joint guardians of the person of Theresa Davidson.
On August 3, 1969, Troy Davidson, Jr. killed his wife, Sylvia Davidson, in Ray-town, Missouri. Shortly thereafter the Parkers brought the minor child, Theresa, who was then five years old, to their home in Bonifay, Florida, where she has since remained in their custody. On February 1'5, 1971, the Parkers filed the instant petition for appointment as guardians of the person and property of the minor child, Theresa. Testimony adduced by the Par- *763 kers reflected without contradiction that they are hard-working, law-abiding citizens; that they have given this child their complete love and affection; and have reared her in a moral atmosphere.
The child’s natural father vigorously contested that part of the petition seeking guardianship of the person of Theresa. The testimony reflects that the minor child was born out of wedlock on September 7, 1964. The birth certificate discloses Sylvia Ramone Parker as the mother, and Troy Hall Davidson, Jr. as the father. Subsequently, the mother married another man, which marriage was of short duration. On the 24th day of April 1966, Sylvia and Troy Davidson, Jr. were married. Approximately two weeks prior to her death, Sylvia and Troy were separated, and she was preparing to divorce Troy. On the occasion that Troy shot and killed his wife, she and a woman with whom she was staying visited the former marital home on a Sunday afternoon for the purpose of picking up some clothes. After .shooting his wife four times with a .32 caliber pistol, Troy immediately drove to a police station and surrendered to the police. He was later acquitted of the murder charges on the grounds of mental disease and mental defect. He was released from the mental hospital as an out-patient after spending approximately 20 days in the mental hospital.
Additional background concerning Troy is that prior to his marriage to Sylvia Parker, he divorced his then-wife who was awarded custody of their five children. In September 1970, Troy married another lady who had been divorced from a prior marriage and who had custody of her 11-year-old daughter.[1] At the time of the guardianship hearing, Troy was an out-patient of a mental hospital in Missouri. A letter from the Director of Forensic Division of Psychiatry, Western Missouri Mental Health Center, was accepted by the parties in evidence which stated, inter alia: “Mr. Davidson presently still is in psychotherapy at this time because of our initial agreement that he be re-evaluated for termination purposes after twelve months of therapy. I am confident' that when this matter comes before the Division as well as the local responsible courts that Mr. Davidson will be found capable of being released unconditionally from the Division of Mental Diseases.”
Appellant contends that the sole question before this court is whether there is clear and convincing evidence requiring the appointment of the Parkers as guardians of Theresa. He then cites the well established rule in Florida that the presumption is that the child should be with the natural father unless there is clear and convincing showing that it is not in the best interest of the child.[2] Judge Carroll set out the basic criteria for cases such as the case sub judice in Johnson v. Johnson,[3] viz.:
“. . . while a parent has a natural God-given legal right to enjoy the custody, fellowship, and companionship of his offspring, that does not mean that under all circumstances a parent will be awarded the custody of his or her child against the claims of relatives or friends, as the case may be. In the final analysis it depends upon the ultimate welfare, or the best interest, of the child, which is the polestar or controlling principle to be observed.”
Speaking for this court in the case of In re Adoption of Vincent,[4] Judge Wigginton stated:
“Although the policy of the law favors the preservation of those parental rights *764 and privileges inherent in the relationship between a natural parent and his child, the law will not hesitate to sever that relationship when the best interest of the child so requires.”
Bearing in mind the factual situation presented to the trier of facts, can it be said as matter of law that the trial court abused its discretion in granting the petition? We hold that he did not. Theresa’s school years have been in the rural environment of Bonifay; her Sunday School and church life is welded to that community; her friends and maternal relatives are so situated; and the home life provided to her by her maternal grandparents is of high moral and spiritual character. The alternative offered by her natural father is to remove her to an alien environment, to a home with a new stepmother who works, and a stepsister she has never met. Although the psychiatrist’s prognosis is excellent as to the father’s mental illness, it is a fact of life that this child cannot escape the knowledge that this man, although held to be mentally ill at the time, killed her mother. To hold under these facts that as a matter of law this child’s best interest would be to place her with her father, would constitute a bald usurpation by this court of the discretion vested in the trial court.
We gratuitously add that a guardianship proceeding does not possess the finality of an adoption. The record reflects a refusal on the part of the Parkers to permit the natural father to visit with his daughter. The father may well seek judicial authority for such visits from the trial court.
The judgment appealed is affirmed.
CARROLL, DONALD K., Acting C. J., and WIGGINTON, J., concur.

. The parties had been married some eight months at the time of the hearing.

. In re Whetstone, 137 Fla. 552, 188 So. 576 (1939).

. Johnson v. Johnson, 114 So.2d 338 (1 Fla.App.1959).

. In re Adoption of Vincent, 219 So.2d 454, 455 (1 Fla.App.1969). Also see Bourn v. Hinsey, 134 Fla. 404, 183 So. 614 (1938).