FRANK W. MILLER, PLAINTIFF IN ERROR, vs. LILLIAN BELLE MILLER, DEFENDANT IN ERROR.

1. The original office of the writ of *habeas corpus* was to release from illegal restraint, but when employed to obtain possession of children of such tender years as to be incapable of exercising a liberty of choice, the court released from illegal restraint and also awarded the proper custody.

2. In conflicting claims between parents for the custody of their legitimate minor children, the right of the father, at common law, is paramount to that of the mother; but the cardinal rule by which courts are governed in awarding the custody in such cases is the welfare of the child, and not the technical legal right.

3. Guided by the child's welfare the court may exercise the discretion, in cases of parental conflict, of awarding the custody to the mother when both father and mother are suitable persons to have possession. This will ordinarily be the case when the child is within the age of nurture and most needs the care of a mother.

4. The court may, in case of a child of tender years, and when its welfare demands it, free it from the evil influences resulting from parental misconduct when of such a nature as to injuriously affect the life and character of the child, but without such conduct and unfitness on the part of both parents the custody should not be taken from both. If they are both suitable, the child's welfare, considering its age, sex and health, may dictate its custody by the mother, but if the latter is unworthy and there is no element of contamination or moral detriment to the child in leaving it with the father, who has the custody, he should not be deprived of his child.

Writ of Error to the Circuit Court for Brevard county.

The facts in the case are stated in the opinion.

*Robbins & Graham*, for Plaintiff in Error.

*John E. Hartridge*, for Defendant in Error.

MABRY, C. J.:

Defendant in error sued out a writ of *habeas corpus* in April, 1896, for the custody of her minor child, a daughter. She alleges in her petition that her husband, Frank W. Miller, had on the 14th of February previous driven her from her home without just cause; that she took with her the child, between two and three years old, and on the 7th of April, 1896, the father forcibly took it from her; that it needed her care and nurture, and she believed the father would send it to some place to estrange its affections from her. Plaintiff in error produced the child and made return denying the allegations in the petition, and alleged that his wife had deserted him. He denied that he had forcibly taken the child, and claimed to be entitled to it as its father. On the hearing by the

Circuit Judge the child was committed to the custody of Mrs. Laura B. Brelsford, its maternal aunt, until further ordered, and that both father and mother be allowed to visit it and be treated with proper respect. The husband sued out a writ of error.

The parties were married in January, 1892, and lived together until February 21st, 1896, when the wife left their home and took with her the child, then nearing its third birth-day. The wife stopped at a neighbor's for a short time, and then went to another house where her husband had secured board for her, and remained there five weeks. During this time the child was sent every day to the father's office to be seen by him. The husband ceased to pay board at the end of the five weeks, and the wife removed to another house. After this removal she declined to send the child to the office any more, in consequence, as she states, of its being sick, attributable by her to over-eating while with the father. She states, however, that she informed her husband that he could see the child at her boarding-house. A short time thereafter the child was permitted to go from the boarding-house to town, and while there the father picked it up in his arms and started to his boarding-house, and then and there was a struggle between the parents for the child. The father retained it, and had it cared for by a lady who had become attached to it before the separation.

The marriage state, voluntarily entered into, imposes duties and obligations that can not be disregarded without serious injury, not only to the parties, but to society. Husband and wife separated and estranged occupy doubtful positions hurtful to themselves, and still more injurious to their children. No such atti-

tude should be assumed by a married person unless unavoidable, and for just cause. A separation without sufficient cause would be violative not only of the marital duties and obligations, but a wrong to offspring and to society. Among the many evils resulting from the destruction of the marital relationship is the oft painful contention of the parents for the custody of their children, and there is no other contention within the range of legal investigation from the determination of which a court would more willingly be relieved. Husband and wife having reached in their domestic discord that state of mind and feeling when they can not agree, impose upon the court the oftentimes painful duty of deciding who shall have the custody of a child. In the present case the court did not award the custody to either parent, but placed the child in the care and control of a third party. It may be conceded that the court has such power and may exercise it upon a sufficient state of facts. In speaking of the right of parents to the custody of children, we said in Marshall vs. Reams, 32 Fla. 499, 14 South. Rep. 95, that it was not absolute and beyond the control of other circumstances that may surround the case, and that the court was not bound to deliver the child to the claimant, but may, where its interests demand it, leave it where its welfare will be best promoted; that it is the benefit and welfare of the child to which the attention of the court ought principally to be directed, and by which it should be guided, whether the contention be between father and mother, or between them and a third person, or between strangers. The ties of nature and of association, the character of the applicant for the child, its age, health and sex, the moral or immoral

surroundings of its life, the benefits of education and development and pecuniary prospects, as well as many other considerations enter into the judicial determination. This is the correct rule in a strictly *habeas corpus* proceeding for the custody of a child. The original office of the writ was to release from illegal restraint, but in case of children of such tender years as to be incapable of exercising a liberty of choice, and where the custody belonged of right to parents, the court not only released from the illegal control, but awarded the proper custody. As between father and mother, the right of the former at the common law, in case of legitimate children, was paramount. State *ex rel.* Neider vs. Reuff, 29 W. Va. 751, S. C. 6 Am. St. Rep. 676. Church (on Habeas Corpus) states the rule as follows: "In conflicting claims between parents for the custody of their legitimate children, the right of the father was held paramount to that of the mother; but the first and cardinal rule by which the courts were governed in awarding the custody was the welfare of the child, and not the technical legal right. The courts were not quite so free to exercise their discretion in the father's favor, by giving him the custody of his child, when the child was not in the father's custody; but if he already had the custody, it would not take it from him, unless he was guilty of neglect or abuse, or his conduct was such that there was probability of moral contamination." Church on Habeas Corpus, sec. 426. Guided by the consideration of the child's welfare when of tender years, the courts often exercise the discretion, in cases of parental conflict, of awarding the custody to the mother, when both father and mother are suitable persons to have possession. This would naturally be the case

when the child is within the age of nurture and most needs the care of a mother. The same consideration, however, would prompt a court to free a child even of tender years from evil influences resulting from parental misconduct when of such a nature as to injuriously affect the life and character of the child. Without such conduct and unfitness on the part of both parents the court should not take the custody from both. If they are both suitable, the child's welfare, considering its tender age, sex and health, may demand that it be given to the mother, but in the absence of such considerations the father has the paramount right. If one of the parents has become unfit by evil habits or improper conduct, and no such charges can be sustained against the other, the custody should be awarded to such one. We conclude from the order made that the Circuit Judge was not willing, on the proofs before him, to award to the mother the custody of the child, though it was of tender age and a girl. From the revelations of the abstract, the conclusion is irresistable that the wife was without sufficient excuse in leaving her husband's home, and thereby breaking up the family ties. More than this, we think the testimony shows such conduct on her part as to fully justify the court in refusing to award the custody of her child to her. The husband has complained of the order made, and not the wife, and we are unable, after a careful examination of the evidence, to sustain the order depriving the father of the custody of his child. Parents have the legal right to the custody of their children of tender age, and in the present case the court having refused to give the child to the mother, the father's right should not have been denied unless good grounds for it were shown. It is

not shown that the husband struck his wife or drove her from his home, nor is he shown to be unfit to have the custody and care of his child. His character is not assailed, and there is no element of contamination or moral detriment to the child in leaving it with its father, and we discover no sufficient ground for depriving him of the legal right, secured to him by the law, to its custody. The court should, in our judgment, have left the child with its father, and secured to the mother the right to visit and see it.

No question was raised as to the correctness of the abstract filed, and we have considered the case, as provided by the rule, on the abstract alone.

The judgment will be reversed.