W. G. LEE, *Plaintiff in Error*, v. R. E. LEE, JR., AND HIS WIFE, L. J. LEE, *Defendants in Error*.

Opinion Filed April 28, 1914.

In a habeas corpus proceeding brought by petitioner and his wife to obtain possession from the father of a female child about seven years old, where it appears that the father has never in a legal way relinquished his parental rights on the child, and that he is a fit person to have the custody of her, the fact that petitioner and his wife have raised the child from its infancy, and are deeply attached to her, will not suffice to deprive the father of his common law right to custody of his child, nor relieve him from his parental obligations to her.

Writ of Error to Circuit Court for Columbia County; M. F. Horne, Judge.

Judgment reversed.

*Guy Gillen,* for Plaintiff in Error;

*Cone & Chapman,* for Defendants in Error.

HOCKER, J.—R. E. Lee, Jr., and his wife, L. J. Lee, filed a petition with the Court Commissioner of Columbia County, Florida, alleging they were the joint "owners" and entitled to the custody and possession of a female child about eight years old, named Alice Lee; that at the time of filing this petition Alice Lee was in the possession and control of W. G. Lee, her father; that Alice was born on the 17th of September, 1906, and immediately thereafter her mother died; that the father of the child Alice, during the latter part of September, 1906, having other children, and no one to care for, control and raise said infant, gave, assigned and transferred the said infant as aforesaid when nine days old to petitioners to have as their own until the child attained its lawful age. Pursuant to said agreement, from the time aforesaid, petitioners have cared for, raised, provided for, controlled and managed said infant in every manner recognized by law and otherwise as their own child, until a few days prior to filing this petition. Petitioners show that W. G. Lee, on the 25th day of November, 1913, did steal, take and carry away said Alice Lee from the custody, control and possession of your petitioners, and illegally and wrongfully detains said child from the custody, control and possession of petitioners, and against the interest, rights and authority of said R. E. Lee and L. J. Lee, and they pray for a writ of Habeas Corpus requiring W. G. Lee to produce the body of Alice Lee, &c. An affidavit of insolvency of petitioners is attached to the petition. The Court Commissioner on a hearing before him ordered that the custody of the child Alice be awarded to L. J. Lee, wife of R. E. Lee, with the right of the father and child to visit each other. W. G. Lee, the father of Alice, gave notice of

a motion to vacate and set aside the findings and judgment of the Court Commissioner. Service of this motion was accepted, and the case was heard by the Circuit Judge on the pleadings and the evidence taken by the Court Commissioner. The Circuit Judge in his order recites that objections to the pleading, practice and irregularities were waived; that in his opinion the best interest of the child does not require that it be taken away from its foster parents, but the order of the Court Commissioner should be modified, and not revoked altogether. "Ordered and adjudged by the court that Alice Lee, a minor between seven and eight years old, a child of W. G. Lee, be and she is hereby awarded to the custody and control of R. E. Lee, Jr., and his wife L. J. Lee, of Columbia County, Florida, and this without prejudice to any application that may be made to this or any other court hereafter for the adoption, for the guardianship or for the care, custody or control of said Alice Lee, and that said order of the said Court Commissioner as modified by this order be and the same is hereby confirmed, and the motions of the defendant is hereby overruled and denied. To which ruling the defendant excepted and his exceptions are hereby noted." A Writ of Error was allowed to the Supreme Court, and twenty days allowed for settling a bill of exceptions.

There are several assignments of error, but the principal one attacks the judgment awarding the custody of Alice Lee to the petitioners, and this requires an examination of the testimony.

R. E. Lee, one of the petitioners, testified in substance, that Alice Lee is over seven years old. She is my first cousin. The defendant is my first cousin. Witness and his wife have had possession of her since she was nine days old, when she was given to his wife. We have done

the best we could. She sucked the bottle for two years. Defendant provided some of the milk for her, we the balance. I furnished clothing until about four years ago. Her father furnished some dresses and shoes. A year ago he furnished a dress and some gingham for a dress. Witness' wife made all of Alice's underclothes since she was nine days old. For the last four years her father has not furnished anything except as stated, and has not visited her in four years. He has come when she was sick and brought doctors, when we let him know—not in three years. Two and a half miles is the longest distance we have lived apart in that time. We cared for the child in its sickness. She had attacks when young, but for three or four years she has been in good health. Drs. Ives and Peeler visited her three or four years ago. We sent the child to all the schools we had. We were sending her to a five-months school when her father took her away. We take her to church when we go. We have no children. This is the only child we have in our possession. I think I can give the child something to eat and wear, and school her. Her father has done practically nothing for her for the last four years. On cross-examination witness said he was thirty-nine years old—does not own a home; has been married sixteen years, and has no children. Lives by farming and other work. He made an affidavit of insolvency in this case. Does not know whether W. G. Lee has any property. Has given witness a few bottles of medicine. Witness owes him thirty-five or forty dollars. Has bought some stuff out of his store. Has bought things out of other stores for Alice and had them charged to defendant, but not within four years. He rents land. His wife and he get along well. Some three or four years ago we separated and witness sought a divorce from her. Witness has brought the child to see its father often until about

seven months ago when he heard her father intended to take her. He requested me to let the child stay with him and go to school at Lulu, but we did not let her go. Defendant has a wife and four children, and is in the ginning business. Two are older and two younger than Alice. He always has something to eat and his children look healthy. Witness has been to defendant's several times for things for the child. He never failed to get what he asked for, but not always when he asked for it; but when my wife went to him and told him that she had to have them he got them. Witness then tells of defendant's two marriages and of his five children.

L. J. Lee, one of the petitioners, testified in substance as to the child being given her by its father when nine days old, and of her nursing her, and giving her a home. Her father married a second time when she was about two years old, and did not claim the child. He had given her a few dresses. She and her husband clothed her. The child knows no mother but witness, who nursed her. Her father did not nurse her. She had the child at school three months, and sent it one month when the father took her from the school house. Her father visited the child once in seven years. Witness took the child to see her father every two weeks, because he was its father. Witness has instructed the child religiously in her own home. Witness owns no home, but lives on other people's land. Once in awhile witness has demanded supplies from the defendant for the child. She has gotten things from defendant's store. Witness took the child because her father gave her to witness. Seven months ago he sent witness word to send the child to go to school at Lulu, Florida, the first time witness ever heard he intended to take her. When the child was so sick we lived one and a half miles apart, and he went to see her twice a week.

She was then three years old. Dr. Peeler was at defendant's house and treated her there. Defendant has four children at home by the last wife, one is two or three years old and one a baby, and two by his first wife.

Mrs. R. E. Lee, Sr., testified in substance: She is stepmother of petitioner, R. E. Lee, Jr.; has known Alice Lee all her life; didn't hear the talk when R. E. Lee, Jr., took the child, but he, (W. G. Lee) has told her that he never expected to bother Alice unless Mrs. Lee gave her to him and told him to take her. Petitioners are poor, but they leave everything to wait on her.

R. E. Lee, Sr., testified that he had heard defendant say he did not intend to bother the child. R. E. Lee, Jr., has a horse and buggy and a year's provisions. He has no feeling against the defendant. Witness owed him a small amount—can't say how long standing—petitioners are kind to her—does not know how they could have done better.

Mrs. O. Roberts testified that she lives a short distance from petitioners. Mrs. Lee treated Alice better than witness treated her children—better than the average person treats their children. On cross-examination she said that she lived within three miles of them all the time. Know W. G. Lee; he provides for his family and they get along all right.

Lewis Waldron, witness for petitioners, knows the child and the parties; live near them. The child was cared for as if she was their own. Defendant has been in the mercantile business four or five years. Witness owes him about five dollars. Witness has visited home of defendant twice; it is all right. He demeans himself all right as far as the witness knows.

Norman Douglass has known petitioners. They treat the child as parents should. Seem to provide for her.

Witness knows defendant; has been in his store. His children seem well provided for. He lives in a comfortable home. So far as witness knows defendant stands well.

Leola Marcum witness for petitioners, has known parties about five years. The affection between them and Alice is as parents and child. They seem to have plenty. Noticed defendant and his family at Lulu. They appear all right, and his children and Alice seem to be about the same.

Amon Marcum knows the parties. Petitioners seem to care foolishly for the child. Thinks the petitioners can take care of her. He has a horse and buggy and some supplies, and hay, corn and fodder. Defendant seems to be comfortably situated. He has a store, some canned goods and crackers; does not know defendant's financial condition.

Several other witnesses for the petitioners testified to the like effect, and one of them testified that defendant has a good home, his children seem to be well kept, his conduct is good. Petitioners have conducted themselves morally and soberly—God-fearing people.

Another witness for petitioners, Blumer Marcum, testified that the petitioners were moral, sober people, and she testifies the same of the defendant and his wife. A number of other witnesses, who were neighbors, testify to the like effect.

W. G. Lee, called the defendant in these proceedings, testified he was the father of Alice; that petitioners had the custody of her until he took her. Has the same affection for her as his other children. After his wife died he had no one to care for her, so let Mrs. R. E. Lee, Jr., take her. Witness was to take her back whenever he took a notion. He has supported the child until this year. They

came to the store and got whatever they wanted for her, and to Scott Gillen's and F. Lamb's stores, and witness paid for it. This year they have not come about. Witness, about May, asked them to bring the child to attend school, and witness would send it back. Since that time they have not come about witness. They did not let the child come. They come and got whatever they wanted from witness. Went to school house and got the child because he did not want any trouble. Put the child with its people. Witness is amply able to care for and educate the child. Witness lives in a town where there are good schools and churches. Would give her the same opportunities as his other children. His wife is a strong woman, able to take care of a family. Witness owns 5 1-2 acres adjoining the town of Lulu, Florida, and two lots where his store is. Carries a stock of $500 or $600 of goods, and buys cotton in the cotton season. Has a farm 2 1-2 miles from Lulu. Bargained it last year for $1,800. Still owns it. His income about $800 per annum. The child has been perfectly satisfied since he took her. Up to a year ago they brought the child say twice a week to see me. She seemed satisfied with my other children. Took the child because he thought it his duty to take her and educate her. Petitioners are not as able to take care of the child as witness. He is worth $3,000 or more. If he could collect what is owing him his property would be clear. Witness owes $35 or $40 store accounts and $1,200 to others.

R. A. Mole, public school teacher at Lulu, testified: Has taught twenty-five years. Defendant's two children are going to school to witness regularly. Usually an eight-months school. His children are clean and healthy. His home is in a good cleanly condition. He has plenty to

eat. Has heard of his morality. If he ever drinks, witness has not heard of it.

C. L. Douglass testified that he knew defendant's domestic affairs. He has a good home; provides well for his family. He has a farm, gin and store. He has a good character, moral and sober. Witness is a brother-in-law of defendant by his first wife. Alice's mother was a sister of witness.

George Lee a brother of defendant testified that up to eleven months ago he staid in the store of the latter. Petitioners often came to get things—nearly every week; he never refused them. If he did not have what they called for he would go out and buy it from other stores. A number of other witnesses testified to the same effect, one of them adding that defendant was affectionate to his children.

It is useless to go into further details. It is evident that all the parties to this litigation are good, plain people. The petitioners are very much attached to the child Alice. They have no child of their own. They are poor people, not owning a home. They have made the best provision for Alice they were able to make. Alice's father has aided petitioners in caring for her. He has shown no indifference to her interests or welfare. He has never given petitioners any exclusive rights in the child. He has other small children, a wife and a well ordered home. He makes comfortable provision for his family. He took the child in order that he might the better discharge his parental duties to her in educating her and training her where there were better schools, churches and social advantages. There is no evidence that she will not be well treated in his home.

At the common law a father is entitled to the custody of his child, in order that he may discharge his parental

obligations, and enjoy its society. Defendant has not legally surrendered or forfeited his parental rights by leaving her for a few years of infancy in the care of near relatives. Courts do not interfere with these sacred rights and duties, except where the best interests and welfare of the child demands it. Nothing appears in this case to justify such interference. 29 Cyc. 1594; Miller v. Miller, 38 Fla. 227, 20 South. Rep. 989; Robertson v. Bass, 52 Fla. 420, 42 South. Rep. 243.

It seems to us that the Circuit Judge erred in the order appealed from, and it is, therefore, reversed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND WHITFIELD, J. J., concur.