STATE, *ex rel.* MARY EMMA WEAVER (Petitioner Below), v. AUGUSTUS P. HAMANS, *et ux.* (Respondents below). (Two Cases)

159 So. 31.
Division B.
Opinion Filed January 21, 1935.
Petition for Rehearing Denied February 19, 1035.

*J. C. Rogers,* for Plaintiff in Error;
*Lennard O. Boynton,* for Defendants in Error.

BUFORD, J.—The writs of error bring for review two judgments of the Circuit Court of Polk County in a habeas corpus proceeding instituted by a mother to acquire custody and control of a girl child of the age of 6 years, wherein the child was remanded to custody of the respondents.

The controlling question presented here for our consideration is whether or not the evidence was sufficient to warrant the judgment.

In Witt v. Burford, 84 Fla. 21, 93 Sou. 186, we held:

"While at common law the father has the paramount legal right to the custody and control of his legitimate minor children, the cardinal rule by which courts are governed in awarding custody in such cases is the welfare of the child, and not the technical legal right."

In Hancock v. Dupree, 100 Fla. 617, 129 Sou. 822, we said:

"Ordinarily the basis of the issuance of the writ of habeas corpus is an illegal detention, but in the case of the writ sued out for the detention of a child, the law is not so much concerned about the illegality of the detention as the welfare of the child, and in proceedings in habeas corpus for the possession of a minor, the question of physical restraint is given little consideration, where a lawful right is asserted to retain possession of the child.

"The court is in no case bound to deliver a child into the custody of any claimant, but should, in the exercise of a sound judicial discretion, after a careful consideration of the facts, leave it in such custody as the welfare of the child at the time appears to require."

Therefore, we have examined the record in the light of the legal principles enunciated in those cases.

It appears from the record that the Judge of the Circuit Court who heard the case below applied those principles to the record.

The record discloses that petitioner instituted habeas corpus proceedings in the same court and before the same Judge who tried the last case on June 16, 1933. The writ was served and answer was filed by the respondents.

The record showed that the mother instituting the habeas corpus proceedings was a widow with five other children of ages ranging from two to ten years of her own then in her custody and dependent upon her; that she also had the

custody and care of a niece of tender years for the keeping of whom petitioner's mother allowed her the sum of $10.00 per month.

It was shown that petitioner was entirely insolvent; that she had no means sufficient to support herself and the children then dependent upon her; that soon after the death of the child's father, something more than a year before the first petition was filed, by agreement with the mother the respondents took this little girl, with the understanding between the parties that they should have the custody and control, care and maintenance of the child at least until she finished her education; that the respondents are amply able to care for the child, to provide her with the necessities and some of the luxuries of life, and that they are devoted to the child and the child to them. At that hearing the learned Judge determined that the mother was not able to give the child those things which were required for its well-being and that it was for the best interests of the child to remain with the respondents. In a long order the Judge set out his reasons for remanding the child to the custody of respondents.

On the 23rd day of July, 1934, the mother filed another petition for writ of habeas corpus to procure custody of the same child from the same parties. The writ was issued; return was made and testimony was taken before the Judge. His findings show that he considered all the testimony taken at the hearing and on the former hearing. The Judge again decided that it was for the best interests of the child for it to remain with the respondents. Again he entered into a lengthy order in which, amongst other things, he says:

"So far as the evidence goes with reference to the respondents continuing to so provide for and rear the child as not to forfeit their rights to the child under the former

judgment of this Court, the Court is convinced that the record proves that the child has had every possible necessary care and attention in the way of music, expression and kindergarten work, has had the best possible physical and spiritual care, and has had the unexcelled personal love of both foster parents and undoubtedly, according to the evidence, the child has a wonderful home, not with wealthy people, but with peoply amply able to take care of her and who love her as good as it would be humanly possible to love their own child. In addition to that, it appears that the foster mother and the child attend church and Sunday school regularly and that the foster father, who apparently before the advent of the child into his home was a heavy drinking man and frequently in trouble because of same, has been made into a new man as a result of his love for the child."

Further in his judgment the Court says:

"Now as to the evidence as to the petitioner, Mrs. Weaver, being in better position now to provide for the child than she was at the time of the previous hearing, even if we assume that her subsequently becoming financially able to take care of the child at a time in the future, after a judgment awarding the child to the respondents, would entitle her to set the other judgment of award aside, which I very much doubt, to say the least, because there must be an end to litigation sometime, nevertheless, it seems to me that the record shows here to this Court, who has heard the testimony at both trials, that there is no great change, according to the evidence, in the condition of the petitioner at the present time, as distinguished from the previous trial."

Further in the judgment the Court says:

"This is a sad case and a case which this Court would much prefer not to be called on to decide. I doubt if even

the wisdom of Solomon himself could settle this problem, because I have no doubt that both the respondents and the petitioner love the child. Of course, there were many considerations from all of the evidence, introduced in the previous trial which entered into the Court's judgment remanding the child to the custody of the respondents. I cannot but conclude, in view of all of the evidence and my observation of the parties, both in and out of the court room, and my observation of the child in the court room, and the actions of the child with reference to the petitioner and the respondents, and of the actions of the parties towards and with reference to the child, that in spite of the fact that the petitioner loves the child with a mother's love, having been separated from the child more than two years, she cannot and would not be hurt as much by allowing the original judgment in this cause to stand as would the respondents. I have no doubt that the respondents are more closely attached to the child at this time than is the petitioner, and, of course, the child is completely attached to the respondents, and it seems to me that while it is a bad situation either way, and the Court realizes that the mother loves the child and would like to have it with the other children, that nevertheless, in view of all the circumstances, it would be a far greater tragedy to society and to the parties involved, and especially to the child and the respondents, to take the child away from them and award it to petitioner than it would be to leave the child where she is. From a humane standpoint, the court is convinced that the lapse of the additional year has greatly increased the necessity for leaving the child with the respondents to avoid the greatest tragedy. My disposition, under ordinary circumstances, as is the disposition of all courts, is to leave the child with its mother or father, but the circumstances of this case are

such that I cannot bring myself to the conclusion that I could or would take the child from the respondents, under all the circumstances of this case, and particularly when I consider the judgment which this Court heretofore entered in a proper and complete trial of this cause on the merits, at which time the Court carefully went into the whole matter and definitely decided the cause."

The evidence disclosed by the record abundantly sustains the conclusions reached by the trial judge and following the rule which we enunciated in the case of Witt, *et al.,* v. Burford, *supra,* we must affirm the judgment.

It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., concurs in the opinion and judgment.