STATE, *ex rel.*, WILLIAM FRANKLIN BONSACK, v. ANNA R. CAMPBELL.

184 So. 332.

Opinion Filed November 9, 1938.

810

*Vincent C. Giblin,* for 'Plaintiff in Error;

*Carl T. Hoffman* and *L. L. Robinson,* for Defendant in Error.

CHAPMAN, J.—This case is here on writ of error to review a judgment dated April 21st, 1937, made and entered by the Circuit Court of Dade County, Florida, awarding and remanding into the custody of Anna R. Campbell Beverly Bonsack, a girl child then about six and one-half years of age. The case is a habeas corpus proceeding between William Franklin Bonsack, the relator and father of the child,

and Anna R. Campbell, the respondent and maternal grandmother. The mother of the child died on December 16, 1935, and the child was born on July 28, 1930. The parents married at Fort Lauderdale, Florida, on August 19, 1928. The custody of the child was claimed in the lower court by respondent on the grounds, viz.: (a) the father was an unfit person to be awarded the custody of the child; (b) the child was by a divorce decree dated July 11, 1935, awarded to the mother, now deceased; (c) the respondent, by will of the mother made prior to her death, was appointed as guardian of the person of the child; (d) the child desires to live with the respondent; (e) the respondent is a fit custodian; (f) the welfare of the child will be detrimentally affected by awarding the custody to the relator.

The right of a father to the custody of his child is a well recognized and established principle of law. In the case of Lee v. Lee, 67 Fla. 396, 65 So. 585, this Court said:

"At the common law a father is entitled to the custody of his child, in order that he may discharge his paternal obligations, and enjoy its society. Defendant has not legally surrendered or forfeited his parental rights by leaving her for a few years of infancy in the care of near relatives. Courts do not interfere with these sacred rights and duties; except where the best interests and welfare of the child demands it. Nothing appears in this case to justify such interference. 29, Cyc. 1594; Miller v. Miller, 38 Fla. 227, 20 South. Rep. 989; Robertson v. Bass, 52 Fla. 420, 42 South. Rep. 243."

While at common law the father has the paramount legal right to the custody and control of his legitimate minor children, the cardinal rule by which courts are governed in awarding custody in such cases is the welfare of the child and not the technical legal right. See State, *ex rel.,* Weaver v. Hamans, 118 Fla. 230, 159 So. 31; Witt v. Burdord, 84

Fla. 201, 93 So. 186; Hancock v. Dupree, 100 Fla. 617, 129 So. 822.

It is the father's responsibility to care for and maintain both the mother and their children, when other considerations affecting the welfare of the children do not require them to be awarded to the care of the mother, or to another, and the father is regarded as having a legal right to the custody and care of his minor children, when he is not shown to be an improper person to best conserve the welfare of his children. See Hopkins v. Hopkins, 84 Fla. 500, 94 So. 157; Busbee v. Weeks, 80 Fla. 323, 85 So. 653; Porter v. Porter, 60 Fla. 407, 53 So. 546, Ann. Cas. 1912C 867; Hernandez v. Thomas, 50 Fla. 522, 39 So. 641, 2 L. R. A. (N. S. 203, 111 Am. St. Rep. 137, 7 Ann. Cas. 446; Miller v. Miller, 38 Fla. 227, 20 So. 989).

Likewise this well established principle of law has its exceptions, which are not only recognized by the courts, but are fully considered and enforced to the end that at all times the welfare of the child shall predominate. The decisions are in accord to the effect that the right of the custody of a child by a parent can or may be forfeited or placed in jeopardy by his own acts or conduct. The general welfare of the child, regardless of the ties of nature, the character of the applicant for child, its age, health, sex, moral surroundings, the benefits of education, religious instructions, and many other considerations, enter into the judicial determination. See Miller v. Miller, 38 Fla. 227, 20 So. 989.

The evidence shows that the relator in the Spring of 1934, deserted his wife and child and shortly thereafter the respondent moved into the home so deserted and lived with her daughter until her death in December, 1935. The child here was kept in that home. The relator moved to Miami Beach and unlawfully cohabited with another woman, and, regardless of the desertion, he visited his wife at her home and in

some instances in a drunken condition, when he indulged in obscene and vulgar language and attempted to disrobe in the presence of his wife and child. The women (wife and mother-in-law) at the home would struggle to get the drunken man into the house and put him to bed. The assistance of the police was requested on one occasion. He was placed in jail on a charge of drunkenness. The relator on cross examination admitted the unlawful cohabitation with a woman prior to the divorce decree in July, 1935; he made a trip to California with her; contacted her in Washington, D. C., and cohabited with her some time in Asheville, N. C. He failed to contribute to the support of his wife and daughter after January, 1935. He learned of his former wife's illness and returned to Miami in October, 1935, and remained as an invited guest in the home until her death in December, 1935, but continued the use of intoxicants while at the home as an invited guest. He was frank in his admission while on the stand as to his associations with women of accommodating virtue, the excessive use of intoxicants, desertion and neglect of his wife and child, and the loss of his business. He expressed it as: "I made a perfect jackass out of myself." Resourceful counsel in his behalf express it thusly: "The evidence revealed a sordid story of the relator's debauchery, improvidence, neglect and infidelity."

It is contended by counsel for the relator that he has reformed, like the prodigal son, "after wasting his substance with riotious living" and with compassion and a contrite heart seeks a return of his possessions. The record shows that shortly after the death of his wife he abstained from the use of intoxicants; that he obtained a responsible position and now has a drawing account of $65.00 per week, plus a possible bonus. It appears that he has been sober, industrious, capable and responsible from December 16,

1935, the date of his wife's death, continuously to the date of the hearing in the lower court on March 25, 1937.—approximately sixteen months, and represented in the lower court that his reformation was and now is permanent, and, as the father, should be awarded the custody of the child as against its maternal grandmother. While it is possible that the exemplary conduct of the part of relator will continue as in the past months, the only safe rule by which to judge the future conduct of an individual is by the past. It is doubtful if the splendid conduct on the part of the relator for a period of sixteen months is a sufficient and convincing assurance that the reformation is permanent. This court cannot afford to experiment with the character, health, education, morals and general welfare of a girl of such tender years as here involved upon the unsatisfactory showing and claims of permanent reformation. The home life of the child where she now resides, as shown by many witnesses, sufficiently and entirely satisfactory for its growth and development and there is no substantial reason given why a change should be made.

While we agree with the conclusion reached on the part of the learned Judge below, we are unable to follow the reasons offered for the conclusion. We think the father should be allowed an opportunity to visit his child at seasonable hours. We have given careful consideration to the entire record and do not believe that the judgment of the lower court should be disturbed at this time. We therefore hold that the judgment appealed from should be affirmed without prejudice on the part of the relator at a later or subsequent date, on proper application to be heard as to the custody of his said child. Likewise, the lower court on proper application will make and enter such orders or decrees as will permit or allow the relator to visit the child

under proper conditions and circumstances and at seasonable hours.

It is so ordered.

TERRELL, C. J., and WHITFIELD, BROWN and BUFORD, J. J., concur.

THOMAS, J., not participating.