ROSWELL K. PENNEY v. JULIA G. PENNEY and HELEN NEFF PENNEY.

1 So. (2nd) 883
En Banc
Opinion Filed April 18, 1941
Rehearing Denied May 19, 1941

*Ragland, Kurz & Layton,* for Petitioner;

*Taylor & Carlton,* for Respondents.

PER CURIAM.—This cause is before us on petition for certiorari under Rule 34 to review an order entered by the circuit judge in an action for separate maintenance and for the custody of the adopted children of the parties, in which order the circuit judge awarded temporary support and maintenance to the plaintiff wife for herself and the two minor children, and the payment of her counsel fees and costs. The cause was submitted here upon the petition for writ of certiorari, transcript of the proceedings in the trial court, and upon the well prepared briefs of counsel and also oral argument, all of which has been duly considered by the

Court. A majority of the Court are not convinced that any reversible error or abuse of discretion on the part of the chancellor has been made to appear.

It is therefore ordered and adjudged that the petition for writ of certiorari be and the same is hereby denied.

BROWN, C. J., TERRELL, THOMAS and ADAMS, J. J., concur.

WHITFIELD, BUFORD and CHAPMAN, J. J., dissent.

CHAPMAN, J. (dissenting).—On petition for a writ of certiorari presented under the provisions of Rule No. 34, an order is sought in this Court quashing an interlocutory order dated October 26, 1940, entered by the Circuit Court of Clay County, Florida. The order complained of: (a) awarded temporary alimony, suit money and counsel fees to the wife, plaintiff below; and (b) awarded the custody of two girls, nine and ten years of age, to the adopted mother.

The bill of complaint was filed on July 12, 1940, under Section 4988 C. G. L., and alleged that the defendant below was guilty of: (a) habitual intemperance; (b) extreme cruelty and was guilty of habitual indulgence in a violent and ungovernable temper. That the defendant below withheld from the plaintiff the means of support from and after July 1, 1940, until July 12, 1940.

The parties intermarried on July 26, 1936, and cohabited together until April 30, 1940. The defendant below at the time of the marriage was a divorcee. On July 18, 1930, the petitioner and his first wife, Helen Neff Penney, adopted a female infant known as Virginia Elizabeth Penney; and on August 10, 1931, adopted a certain infant female known as Ann Cynthia Penney. These children lived with the petitioner from the date of adoption until the custody thereof was awarded to the respondent in this proceeding under the order here assigned as error.

The petitioner owned a large and well furnished home

located in Green Cove Springs, Florida, and after marriage the respondent assumed the control and management of the home and an adoption order of the court was made to her as to the two girls. It does not appear by the record that the court considered the orders of adoption to Helen Neff Penney as entered by the Illinois and Ohio courts, and a consideration of this point is not essential to a disposition of the case at bar.

There is no evidence in the record to show that the petitioner was habitually drunk or so intemperate because of the excessive use of intoxicating liquors as would constitute a ground for divorce. See Hayes v. Hayes, 86 Fla. 350, 98 So. 66; McGill v. McGill, 19 Fla. 341. The petitioner admitted that he drank socially but not to an excess. His business associates and those employed by the corporation for which he worked corroborated his statement. The exception to this is the testimony of his wife.

The petitioner contends that the testimony adduced to establish extreme cruelty and an ungovernable temper practiced toward the respondent was legally insufficient to bring the case within Windham v. Windham, 144 Fla. 563, 198 So. 202, and the several cases therein cited. There is disputed and contradictory testimony in the record to sustain such a finding and on this point it has not been established that the lower court abused its discretion. The burden of showing an erroneous ruling was on the petitioner. See Stover v. Stover, 103 Fla. 284, 137 So. 249.

The petitioner shows that he furnished the respondent with a commodious and well furnished home and on July 12, 1940, at the time of filing the bill of complaint she was living in the home. The petitioner likewise was rooming or living in a different section of the same home, but the respondent failed or omitted to prepare or cause the servants in the home to prepare his meals. He went to the kitchen

for his meals but none would be prepared, although he at the time supplied respondent with a home, automobile and four servants and he was forced to go away from home to get his meals.

The petitioner's father established a trust and from this source the respondent was paid approximately $60.00 each month, and in addition thereto the petitioner paid to her as household expenses for many months prior to filing suit, the sum of $200.00 per month. She received the payment of $200.00 for the month of June, 1940, and on July 8, 1940, petitioner paid her $75.00 and paid $100.00 to a grocery store on an account of $189.00 incurred by respondent and not paid. On August 2, 1940, she was paid $103.67 and respondent had a charge account at a grocery store where groceries could be obtained by her and the costs charged to the petitioner. It is true, as disclosed by the record, that the petitioner discontinued the practice of permitting and allowing his wife to sign checks on his bank account, closed out the charge accounts at different stores and ran an ad in the paper to the effect that he would not be responsible for debts incurred by his wife. He felt that she was amply provided for and that her control or management of his household had created a large debt and he had difficulty in satisfying his creditors out of his monthly income.

The testimony shows that the petitioner's home and furnishings are worth approximately $10,000.00 and that the respondent is living in the home; that the stocks and bonds owned by him are worth around $11,000.00; his salary is $725.00 per month; that the home is mortgaged for the sum of $1,000.00 and the sum of $83.33 is used monthly to amortize the mortgage indebtedness; the sum of $100.00 is paid monthly to Helen Neff Penney as alimony under a decree of the court; and that after these monthly payments

are made, the petitioner has net monthly the sum of $550.00; he has an unpaid outstanding indebtedness in the sum of $9,581.75 and of this amount $8,381.75 is chargeable for living expenses incurred by the respondent in the management (or mismanagement) of petitioner's household affairs; and from his monthly salary he tried to make payments on his indebtedness and thereby satisfy his creditors.

The parties here live in the same house and four servants are hired. The petitioner provided a charge account at a grocery store where respondent could buy food and the necessities. The record shows that she bought them during the month of July, 1940, and had the same charged to him, and with four servants on the place, the petitioner here who was the owner of the homestead where respondent was living, and paying around $200.00 per month for the support of his wife and two adopted daughters, was forced to leave his home to obtain his meals. The court below held that the petitioner withheld support from the respondent from July 1 to 12, 1940, but at this time the respondent had a bank balance in her behalf in the sum of over $100.00; and a private income of approximately $60.00 per month, and her husband was paying for her household expenses at the rate of $200.00 per month.

The order challenged was entered under the provisions of Section 4988 C. G. L., viz.:

"4988. (3196) ALIMONY UNCONNECTED WITH DIVORCE.—If any of the causes of divorce set forth in Section 4983 shall exist in favor of the wife, and she be living apart from her husband, she may obtain alimony without seeking a divorce upon bill filed and suit prosecuted as in other chancery causes; and the court shall have power to grant such temporary and permanent alimony and suit money as the circumstances of the parties may render just; but no alimony shall be granted to an adulterous wife."

One of the serious questions appearing on this record is whether or not the testimony adduced by the respondent brings her within the provisions of Section 4988 C. G. L., *supra,* which provides: "The court shall have power to grant such temporary and permanent alimony and suit money as the circumstances of the parties may render just." This Court in numerous cases has determined the question of temporary and permanent alimony and suit money as incidental to a divorce. We have consistently held that before a court is justified in making an allowance to a wife in a divorce suit for alimony and suit money, certain essentials must be made to appear, viz.: (a) the necessity of the wife for want of means or sufficient means to maintain herself during the litigation and with which to employ counsel; (b) it must appear that the husband had the means to supply this necessity. See Shepard v. Shepard, 128 Fla. 72, 174 So. 330; Floyd v. Floyd, 91 Fla. 910, 108 So. 896; Arendall v. Arendall, 61 Fla. 496, 54 So. 957, Ann. Cas. 1913A 662; Haddon v. Haddon, 36 Fla. 413, 18 So. 779; Sanchez v. Sanchez, 21 Fla. 346; Underwood v. Underwood, 12 Fla. 434; Phelan v. Phelan, 12 Fla. 449.

In the case of Floyd v. Floyd, *supra,* the question of temporary alimony was before the court under the provisions of Section 4986 C. G. L. The wife sought temporary alimony and suit money and it was shown that she was living apart from her husband and receiving a salary of $200.00 per month and an additional sum as a lecturer. In applying the provisions of Section 4986, *supra,* to the record therein, it was held that the petition for temporary alimony and solicitor's fees was not "well founded." The case at bar was brought under Section 4988 and contemplates an equitable adjudication on the part of a court of equity "as the circumstances of the parties may render just." The statutes do not authorize an award of alimony and suit

money as a matter of course, but necessarily rests upon the exercise of sound judicial discretion on the part of the chancellor, as shown by the use of the words "petition well founded," appearing in Section 4986 C. G. L., and the words "as the circumstances of the parties may render just," appearing in Section 4988, *supra*.

This interpretation harmonizes with the construction by many States having similar statutes, as expressed by Schoulder on Marriage, Divorce and Separation, Vol. 2 (6th ed.), par. 1770, pages 1951-2, viz.:

". . . Under statutes in many States the wife is entitled to alimony *pendente lite* in many cases of need, and the trial court usually has power to order the payment of alimony and counsel fees *pendente lite* where the wife is without separate means, or where the wife's means are insufficient to support her, and not where the wife is complainant and she has means sufficient for her support.

"Where, in a suit by a husband against his wife for divorce, she shows herself to be without means and dependent, a suitable allowance should be made for her support, but it will not be allowed where the husband is complainant and the wife has means sufficient for her defense and support.

"Where the husband continues to support his wife during the pendency of the suit no allowance will be made."

See Bulke v. Bulke, 173 Ala. 138, 55 So. 490; McCloskey v. McCloskey, 68 Mo. App. 199; Earle v. Earle, 60 Ill. App. 360; Lathrop v. Lathrop, 78 Conn. 650, 63 Atl. 514; Dudley v. Dudley, 86 N. J. Eq. 245, 98 Atl. 452.

The petitioner testified that the respondent was extravagant in the expenditure of his money and cited as an example that she had 85 or 90 dresses and 40 or 50 pairs of shoes, while the wife contradicted the statement by stating that approximately one-half the number of dresses and

pairs of shoes would be more accurate. She had plenty of clothes, lived in a home with furnishings owned by the petitioner, valued at approximately $10,000.00; received personally a monthly income of about $60.00; the sum of $200.00 per month was provided by the husband as household expenses; she had an automobile and gas and oil paid for by the husband; had four servants about the place; and she incurred additional obligations for household expenses between eight and nine thousand dollars which the husband was trying to pay from his monthly salary, but when he went to his own kitchen for his meals, no provision was made for him and he was required to leave home to get his meals. I think the necessities of the respondent were being cared for by the petitioner when the bill of complaint was filed on July 12, 1940. "The circumstances of the parties," as shown by the record, did not justify the decree for temporary alimony, attorneys fees and suit money, and the allowance of same was therefore erroneous.

The care, custody and control of Ann Cynthia Penney, a female aged nine, and Virginia Elizabeth Penney, a female aged ten, adopted children of the parties, by the decree of the court was awarded to the respondent, with the right of visitation to the petitioner. This order or decree is challenged on this record on the ground that there is no testimony in the record to show that the petitioner (or adopted father) was an unfit and improper person to have the care, custody and control of said children. The petitioner and his former wife adopted the children during the years 1930 and 1931, respectively, when infants. The children have known no other father; and Helen Neff Penney, former wife of the petitioner, I infer from the record, was granted the right to visit the children at certain periods. The respondent, the second wife of petitioner, came into the lives of the children after her marriage in 1936 to the petitioner.

The rule of law controlling courts in awarding the care and custody of children is based upon the welfare and best interests of the minors, rather than on the desires and wishes of parents. The rule is well expressed by Mr. Justice Thomas in Fields v. Fields, 143 Fla. 886, 197 So. 530, when this Court, in part, said:

"While we have said that the 'welfare (of children) becomes paramount to that of the comforts, desires and welfare of either or both of the parents (Kennedy v. Kennedy, 101 Fla. 239, 245, 134 South. Rep. 201, 203) we have also held that 'The statutes of this State recognize the natural, inherent and consequently legal right of parents to have the custody of their children.' (Frazier v. Frazier, 109 Fla. 164, 168, 147 South. Rep. 464, 466). It was further stated in Kennedy v. Kennedy, *supra,* that to this paramount consideration for the wellbeing of the child the rights and wishes of the parents will not be subordinated unless the latter are 'opposed' to the former.

"The financial worth of persons, other than the parents, to whom children may be awarded is important only when it appears that the parents themselves are unable to provide the necessities of life and prevent their children from becoming the objects of charity and a charge upon the community.

"The matter of custody cannot be placed upon any of the bases, welfare of the children, financial worth of the ones seeking their custody or desires of the parents without some regard for the others. . . ."

In the case of State *ex rel.* Rasco v. Rasco, 139 Fla. 349, 190 So. 510, the Court, speaking through Mr. Justice Terrell, said:

"It is true that under the common law the father had the superior legal right to the custody of his minor child or children, but even under the common law this doctrine

was subject to modification if necessary in the interest and welfare of the child. Hopkins v. Hopkins, 84 Fla. 500, 94 So. 157; Minick v. Minick, 111 Fla. 469, 149 So. 483."

It is settled law that a father has the legal right to the custody and control of his minor children, subject to their general welfare, as expressed in Fields v. Fields, *supra*. The legal right of the father to the care and custody of his minor children can or may be forfeited by his own acts or conduct. In the case of State *ex rel*. Bonsack v. Campbell, 134 Fla. 809, 184 So. 332, it was by this Court in part said:

"The right of a father to the custody of his child is a well recognized and established principle of law. In the case of Lee v. Lee, 67 Fla. 396, 65 So. 585, this Court said:

" 'At the common law a father is entitled to the custody of his child, in order that he may discharge his parental obligations, and enjoy its society. Defendant has not legally surrendered or forfeited his parental rights by leaving her for a few years of infancy in the care of near relatives. Courts do not interfere with these sacred rights and duties; except where the best interests and welfare of the child demands it. Nothing appears in this case to justify such interference. 29 Cyc. 1594; Miller v. Miller, 38 Fla. 227, 20 South. Rep. 989; Robertson v. Bass, 52 Fla. 420, 42 South. Rep. 243.'

"While at common law the father has the paramount legal right to the custody and control of his legitimate minor children, the cardinal rule by which courts are governed in awarding custody in such cases is the welfare of the child and not the technical legal right. See State *ex rel*. Weaver v. Hamans, 118 Fla. 230, 159 So. 31; Witt v. Burdord, 84 Fla. 201, 93 So. 186; Hancock v. Dupree, 100 Fla. 617, 126 So. 822.

"It is the father's responsibility to care for and maintain both mother and their children, when other considerations

affecting the welfare of the children do not require them to be awarded to the care of the mother, or to another, and the father is regarded as having a legal right to the custody and care of his minor children, when he is not shown to be an improper person to best conserve the welfare of his children. See Hopkins v. Hopkins, 84 Fla. 500, 94 So. 157; Busbee v. Weeks, 80 Fla. 323, 85 So. 653; Porter v. Porter, 60 Fla. 407, 53 So. 546, Ann. Cas. 1912C 867; Hernandez v. Thomas, 50 Fla. 522, 39 So. 641, 2 L. R. A. (N. S.) 203, 111 Am. St. Rep. 137, 7 Ann. Cas. 446; Miller v. Miller, 38 Fla. 227, 20 So. 989.

"Likewise this well established principle of law has its exceptions, which are not only recognized by the courts, but are fully considered and enforced to the end that at all times the welfare of the child shall predominate. The decisions are in accord to the effect that the right of the custody of a child by a parent can or may be forfeited or placed in jeopardy by his own acts of conduct. The general welfare of the child, regardless of the ties of nature, the character of the applicant for child, its age, health, sex, moral surroundings, the benefits of education, religious instructions, and many other considerations, enter into the judicial determination. See Miller v. Miller, 38 Fla. 227, 20 So. 989."

The father of the two minors, as a matter of law, is entitled to the care and custody thereof unless by his acts or conduct he has forfeited this right. In other words, the record must disclose that the father, in the case at bar, because of his acts and conduct, is an improper and unfit person to have the care and custody of these minor children. The brief of counsel for respondent recognizes this controlling principle and sets out the several reasons to support the decree why the father is an improper and unfit person. They are, viz.: (1) "The children are girls and nine and

ten years of age." The record sustains this deduction. (2) "Petitioner curses in the presence of the children." It is true that the respondent so testified but this was denied by the petitioner and associates appearing in the home. The language used on two occasions appears in the record. The temperate use of profanity as disclosed by the record does not render the father unfit or improper. (3) "Petitioner is in constant company of another woman." Let us admit that the statement is accurate, in the absence of a showing by respondent that the "other woman" is of bad repute and low morals, it is not a sufficient cause or reason to hold the father unfit. (4) "Petitioner has absented himself from his daughters and had practically no meals with them since early April, 1940." The petitioner's answer to this charge is that he went to his own kitchen for meals and his wife failed to prepare the same and he had to leave home to get his meals. (5) "Petitioner, while drinking, has taken daughters to other woman's house." (6) Petitioner has had the daughter, Ann, mix drinks for him." These may be answered as one. The record shows that Helen Neff Penney had a right under the decree of divorce to visit the children and she desired to visit them at a certain home located about two blocks from the home where the parties to this suit lived. The children were taken there for this purpose. The petitioner drinks some on occasions when friends visited him, but not excessively, and this conclusion must rest on the testimony of the respondent, and on an opinion of a young man who saw him on a "single" occasion. It is shown by the record that the respondent consumed alcohol and got drunk. The parents drink and the evil influence of alcohol on the children has not been removed by awarding them to the custody of their mother. The record shows that one of the girls mixed liquors for the petitioner on some two or three occasions.

(7) "Petitioner was drunk at dinner table and in the presence of the daughters and their child guest, spit olive seeds across the room and threatened to throw a glass of milk upon respondent." The petitioner admitted that he spit olive seeds across the room for the amusement and entertainment of his children, but was not drunk and did not threaten violence to the respondent. Other reasons are given to show that the petitioner was an unfit and improper person to have the custody of the children because of his conduct and that his rights as provided by law had been forfeited. I am unable to agree to the conclusion on this point expressed in the order or decree. I fail to find evidence in the record to support this provision of the decree.

Respondent testified that when petitioner and several others were on a boat trip she saw the petitioner attempt to kiss a named woman, and attempted other familiarities; at a later date she saw petitioner and the same woman and he had his arm around her waist; and another time on an extension telephone she heard him make love to her. Grave doubt was placed on this testimony when the several members of the boat party were called as witnesses and testified they failed to see or observe any misconduct of the husband. The mother of the woman was at home when it is asserted that the petitioner was familiar with her daughter, and the mother died in May, 1940. The love-making over the telephone is of little value as testimony. Whether or not these several items were germane to the issues is not considered. All the testimony shows the respondent jealous of this woman and this thread runs through her testimony after the alleged misconduct of her husband on the boat trip. The qualifications of the respondent to have the care and custody of these children is not material to a decision of this case. I fail to find sufficient testimony in the record to show that the petitioner was an unfit and improper person to have the care and custody of his children.

I fail to find error in that part of the order or decree holding that it was for the welfare of the children that they continue to live or reside in the Town of Green Cove Springs and attend the public schools of Clay County.

I have not overlooked the established rule of this Court to the effect that the findings and conclusions of a chancellor on the testimony will not be disturbed on appeal unless an abuse of discretion is made to appear. I think that the chancellor below failed or omitted: (a) to apply the correct principle of law to the facts adduced to the effect that before entering an order granting temporary alimony, suit money and attorney's fees, the necessities of the wife shall be made fully to appear; (b) also that the evidence must show that the father was an unfit and improper person to have the care and custody of his children.

I think the petition for a writ of certiorari should be granted and the portions of the order granting temporary alimony, suit money and attorney's fees, and holding that the petitioner is an unfit and improper person to have the care and custody of his children should be quashed, but in all other respects the prayer of the petition for a writ of certiorari should be denied.

WHITFIELD and BUFORD, J. J., concur.