**ROBERT DANIEL SMITH v. MYRTLE HARMON SMITH, as Custodian and Natural Guardian of the Person of AGNES CAROLYN SMITH, a minor.**

36 So. (2nd) 920
October 1, 1948

June Term, 1948
Special Division A

Gregory & Towles, for appellant.
Gardner & Lines, for appellee.

CHAPMAN, J.:

From an order awarding the custody of a girl child, Agnes Carolyn Smith, born May 26, 1939, to its mother eleven months of the year and one month to the father, an appeal has been perfected here by the father. Counsel for appellant contend that in awarding the custody of the child preference should be given to the father where each parent is found to be a suitable person to have the custody thereof. Counsel cite and rely on our holdings in Miller v. Miller, 38 Fla. 227, 20 So. 989; Maddox v. Barr, 49 Fla. 182, 38 So. 766; Lee v. Lee, 67 Fla. 396, 65 So. 585; Hopkins v. Hopkins, 84 Fla. 500, 94 So. 157; State ex rel. Bonsack v. Campbell, 134 Fla. 809, 184 So. 332, and similar cases.

The lower court considered and ruled upon the following evidence as stipulated to by counsel of record:

"Myrtle Harmon Smith and Robert Daniel Smith were married to each other in South Carolina in 1938. On May 26, 1939, a daughter, Agnes Carolyn Smith, was born of this marriage. The family lived together until about May, 1945, except for a few months early in 1944, during which Robert Daniel Smith served in the United States Navy.

"About the month of May, 1945, while the wife and child, without the consent of the husband-father, were temporarily in Cleveland, Ohio, attending a convention of 'Jehovah's Witnesses' (a faith adopted by the wife after the marriage over the objections of her husband), the husband left the home and the parties have not lived together since. The cohabitation of the parents ceased at that time.

"For some time prior to the separation of Myrtle Harmon Smith and Robert Daniel Smith, the latter had been engaged in the jewelry business in Woodruff, South Carolina, and had in his employ a lady by the name of Mrs. Everette Gilmore Williams. In September, 1946, Mr. Smith and Mrs. Williams each secured a divorce in Augusta, Georgia, at the same term of Court and represented by the same attorney. Both divorces were secured on constructive service and the notices ran concurrently in the newspapers. Mr. Smith testified that he established a residence in Georgia 'In the summer of' and, at another time 'In May', 1945. The notice for constructive serv-

ice was running in March, 1946. Mr. Smith also testified that he satisfied both his lawyer and the Georgia Court that he had established sufficient residence in Georgia to secure a divorce there.

"Mr. Smith and Mrs. Williams were married to each other very shortly after their respective divorces and are now living together as husband and wife. The present Mrs. Smith, formerly Mrs. Williams, did not testify or appear before the Court in these habeas corpus proceedings.

"Within a few months after his second marriage Mr. Smith disposed of his jewelry business in Woodruff, South Carolina and established a similar business in Havana, Gadsden County, Florida, where he, his present wife, and a ten year old daughter of the latter by her first husband, have since lived.

"After the separation of Myrtle Harmon Smith and Robert Daniel Smith, Myrtle Smith, who retained custody of their child, Agnes Carolyn Smith, moved with the child to Greenville, South Carolina, and secured employment in a textile mill where she earned $40.00 per week. Mr. Smith contributed fairly regularly and fairly substantially to the support of the child.

"This situation continued until October 1947, at which time Mr. Smith went to Greenville and, without the mother's knowledge or consent brought the child to Havana, Florida. A few weeks later the mother, Myrtle Harmon Smith, without the knowledge or consent of the father, took the child from Havana, Florida, and carried it to the home of her married sister, who had two children, the approximate age of Agnes Carolyn, out in the country from Woodruff, South Carolina, about forty miles from Greenville. She testified that she left the child with her sister in order to prevent the father retaking it and that she visited it frequently on week-ends. However, in February, 1948, the father again went to South Carolina, took the child from the school it was attending and brought it back to Havana, Florida. The mother then instituted habeas corpus proceedings to secure legal custody of the child.

"The evidence shows that when Agnes Carolyn Smith was brought to Florida from the home of her aunt she was in poor health, but rapidly improved; that her teeth needed considerable attention and this was provided by the father. There is no evidence as to the physical condition of the child when first taken from the mother in Greenville in October, 1947.

"The evidence in no way reflects upon the moral character, habits, or conduct of either parent. Apparently the principal, if not the only objection the father has to the mother as a proper custodian of the child, is that she is rearing the child to believe in the tenets of 'Jehovah's Witnesses', a religious sect of which the father strongly disapproved, he is not a member of any church but sometimes attends the Baptist Church.

"Both parents appear to love the child and to strongly desire its custody.

"The father is now in the jewelry business in Havana Florida, making about $400.00 a month. The mother's earnings are about $40.00 per week.

"Myrtle Harmon Smith testified that if awarded custody of the child she would return with it to her home in Greenville, South Carolina, and keep it with her there. The home is described in a confidential report of the Welfare Department which will be certified to the Supreme Court.

"The evidence shows that when the child was with her, Mrs. Smith had an arrangement for the care of the child by a neighbor while she was working and at other hours gave the child her personal attention.

"That Myrtle Harmon Smith had complete care, custody and control of the said minor child, Agnes Carolyn Smith, from the time of the separation of the parents in 1945 until this controversy arose."

The Court below held both the father and mother fit and proper persons to have the custody of the child but a substantial reason exists for placing the child with its natural mother for eleven months and the father one month of each year. It was not clear to the lower court that the interest and welfare of the child would be safeguarded by awarding it to the father, thereby placing it in a home presided over by a

stepmother and cause it to be associated with her child by a former marriage with whom no natural bonds exist. The moral and religious atmosphere of their home for some reason was not clearly developed by the testimony. Courts in awarding the custody of minor children are motivated by the best interest and welfare of the child rather than perpetuating some of the ancient law rules wherein the father was perferred over the mother as set out in the cases cited by counsel for appellant.

In Green v. Green, 137 Fla. 359, 188 So. 355, Chief Justice THOMAS, speaking for the Court on the point now before us, in part, said: "Nature has prepared a mother to bear and rear her young and to perform many services for them and to give them many attentions for which the father is not equipped." In Randolph v. Randolph, 146 Fla. 491, 1 So. (2nd) 480, the Court speaking through Mr. Justice TERRELL, said:

"So the ultimate test of guardianship in this State is the spiritual and moral well being of the child. With these factors in mind, the chancellor may award it to the father, the mother, or a stranger to the blood as the circumstances require or he may do as he did in this case, make an award to both parents. The idea that the father has a right superior to the mother is a dogma long since obsolete and as dead as the law of primogeniture. It departed the way of many old common law rules that served the purpose at one time but fail completely to respond to present concepts of justice."

See Baxter v. Baxter, 158 Fla. 886, 30 So. (2nd) 492.

We fail to find error in the record.

Affirmed.

THOMAS, C. J., TERRELL and HOBSON, JJ., concur.