### STATE ex rel. GIAMBRA v. HALLETT.
### No. H.C. 2104.

Circuit Court, Dade County.

December 17, 1959.

Gertler & Schwartz, Miami Beach, for petitioner.

Hendricks & Hendricks, Miami, for respondent.

IRVING CYPEN, Circuit Judge.

The petitioner, Hope Giambra, the natural mother of John Philip Giambra, born March 11, 1949, seeks the custody of the minor from Hazel B. Hallett.

The determining question is whether the showing made by the petitioner is sufficient to justify the awarding of custody to the petitioner.

The petitioner, a resident of New York City, alleges that she was divorced from her husband in 1951 and was given custody of four children including the minor whose custody is sought in this proceeding, who it is alleged is restrained of his liberty by Mrs. Hallett in Miami.

In explanation of the reasons why the minor is in the custody of the respondent, petitioner alleged that because of a bronchial condition of the minor, petitioner permitted her sister to take him from New York City temporarily to Florida and while the sister and the

minor were in Miami the sister became ill, was hospitalized and the minor was taken by the respondent without petitioner's consent or acquiescence; that for some time monies were sent for the care and maintenance of the minor; and that for several years past petitioner has demanded the return of her son, which demand was refused by respondent, who demanded a substantial sum of money as a condition to the return.

Respondent by her answer admitted that the minor was in her care and custody, denying however that he was detained or restrained of his liberty without lawful authority.

Respondent alleges that on or about March 15, 1954 a daughter of respondent advised her that the minor was going to be turned over to local welfare authorities and placed in a juvenile home, and respondent consented to keep the minor for a few days until arrangements could be made by the minor's aunt for the minor's keep, but that for approximately three months respondent was unable to contact the aunt while she continued to keep the minor. After the minor had been in the custody of respondent for approximately four months, the petitioner called and stated that when she was finally able to pay respondent for the care of the minor she would send for him, the mother stating that she had been unable to care for him, but that several months passed thereafter without any communication.

The respondent further alleged that the minor was ill and his eyes crossed and affected when she received him, that she and her husband have supported, maintained and educated him not for any hope of financial reward but for the welfare of the minor — that the sole reason for not returning him was because from information received the atmosphere, place and surroundings of the petitioner were not conducive to the best interest and welfare of the minor. Respondent requested in her answer that a complete and thorough investigation of living conditions, surroundings and moral habits of the petitioner and other matters affecting the welfare of the minor be made by the court as respondent was informed and believed that neither the petitioner nor the aunt are persons of responsible moral character and it would be detrimental to the future and welfare of the minor to be placed with the petitioner.

The testimony of the parties was heard by the court, the petitioner and the aunt testifying as well as the respondent and other persons acquainted with the respondent and the minor.

Upon the conclusion of the testimony introduced in the cause, the court pursuant to F.S.A. 65.21 as amended, invoked the aid of the state department of welfare to make an investigation concerning

all pertinent details relating to the minor and the petitioner and respondent—and such investigation has been made and filed in this cause, and is attached.

From the testimony it is undisputed that the respondent Hazel B. Hallett and her husband, J. Frank Hallett have provided a good, wholesome home for the minor, have supported, maintained and educated him, furnished him with medical care and attention when needed (including the correcting of his eye condition), and have freely given to the minor of their love, care and affection and appear to be quite devoted to him, giving proper moral and religious training, providing him with proper clothing, and it appears they have sufficient income to continue to provide adequately for him.

The court talked privately with the minor and he appears to be well adjusted, happy in his environment and does not desire to live with the petitioner. He indicated that all he can remember of his life in New York was being hungry and out in the streets.

The petitioner in her testimony admitted to giving birth to two illegitimate children prior to her marriage to Mr. Giambra but was unable under oath to recall having given birth to any other children. In this instance it appeared to the court to be most strange that a woman could not recall whether she had had any other children. The report of the state welfare board indicates that since the birth of the minor, the petitioner has given birth to two additional illegitimate children, which the court believes to be the true situation. Petitioner testified to her employment. She claimed that she receives assistance from the minor's father as well as her own father, and asserted that she would be able to support the minor. It appears that she is presently living in a three room apartment with three children and her mother.

A natural parent has a right to the custody of his child, absent conduct or conditions that justify the deprivation of the right in the interest of the welfare of the minor. While this right should not be lightly regarded, it is not absolute as against the actual welfare of the child. See Torres v. Van Eepoel (Fla.), 98 So. 2d 735.

It is clear in this case, however, that the mother has shown little if any interest in the welfare of the minor by her conduct toward him over a period of many years, apparently being content with allowing him to be supported, maintained, reared and educated by persons with whom she was not acquainted, leading the court to the conclusion that she has been guilty of blameworthy neglect and irresponsibility for the minor's welfare.

She has not, to the satisfaction of the court, proven that she is adequately able to care for the minor in a manner in keeping with the child's welfare. To award the minor to the petitioner would have the effect of removing him from an area where he has a good home, good surroundings, proper moral and educational environment, from his friends and associates and to a place where, from the evidence and the report on file, the surroundings would not be conducive to his welfare and best interest.

It is the firm conviction and finding of the court that the natural mother is not of sufficiently good moral character to have custody of this minor. In view of the lack of morality on the part of the mother, it would be a shame to send this child out of this jurisdiction to her.

The court believes that this case is controlled by Maddox v. Barr, 49 Fla. 182, 38 So. 766, where the court said —"the law is not so much concerned about the illegality of the detention as the welfare of the child * * * ". It was further said as to such proceedings that —"The court, when asked to restore an infant, is not bound by any mere legal right of parent or guardian, but is to give it due weight as a claim founded on human nature, and generally equitable and just. The court is in no case bound to deliver a child into the custody of any claimant, but should, in the exercise of a sound judicial discretion, after a careful consideration of the facts, leave it in such custody as the welfare of the child at the time appears to require."

This rule has been followed in other cases involving the claim of a parent or legal custodian to the custody of a child as against the claims of third persons. See State ex rel. Weaver v. Hamans, 1935, 118 Fla. 230, 159 So. 31; State ex rel. Hicks v. Cain, 1948, 160 Fla. 680, 36 So. 2d 275; Fielding v. Highsmith, 1943, 152 Fla. 837, 13 So. 2d 208; Arnd't v. Prose (Fla.), 94 So. 2d 818.

It is the finding of the court that the best interests of the minor require that he be permitted to stay with the respondent.

It is therefore, considered, ordered, adjudged and decreed—(1) That the writ of habeas corpus previously issued in this cause is discharged. (2) That John Philip Giambra is made a ward of this court, and is not to be removed from Dade County without permission of this court. (3) That the temporary care, custody and control of John Philip Giambra is awarded to Hazel B. Hallett and J. Frank Hallett, and (4) That the court retains jurisdiction of this cause for the purpose of entering such other and further decrees as may be proper concerning the welfare of the minor.